FILED

March 24, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:11 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| **Charles Murray** <br>        **Employee,** ) | **Docket No.: 2015-02-0078** |
| **v.** ) | **State File Number: 1517-2015** |
| **Straightline Masonry** ) | |
|        **Employer,** ) | **Judge Brian K. Addington** |
| **And** ) | |
| **Cincinnati Insurance Company** ) | |
|        **Insurance Carrier.** ) | |
| ) | |

---

## EXPEDITED HEARING ORDER DETERMINING MR. MURRAY'S EMPLOYMENT STATUS AND DENYING WORKERS' COMPENSATION BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on March 16, 2016, on the Request for Expedited Hearing filed by Charles Murray pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of the case is the status of Mr. Murray's employment at the time of injury. The central legal issue is whether Mr. Murray was an employee of Straightline Masonry at the time of his December 26, 2014 injury.[1] For the reasons set forth below, the Court finds Mr. Murray was not an employee of Straightline Masonry at the time of his injury and thus was not covered under the Workers' Compensation Law.

### History of Claim

Charles Murray is a thirty-five-year-old resident of Washington County, Tennessee. (T.R. 1 at 1.) Straightline hired him to work as a mason in the summer of 2014. His supervisors testified he was a great mason, but that he did have some attendance issues. Mr. Murray earned $18.25 an hour.

On December 22, 2014, Mr. Murray and other employees, and Joe Ball, a partner of Straightline, worked at a job site called Bailey Ranch, a subdivision. This project was a

---

[1] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

residential home constructed by Mr. Sam Kassem, the general contractor. Straightline's crew partially built a wall that day. Straightline performed no other work at Bailey Ranch the week of December 22.

On December 23, 2014, Straightline moved its employees to a CenturyLink worksite in Piney Flats, Tennessee, to build a small building. The general contractor at this site was Hoilman Construction. Mr. Joe Ball supervised Straightline's work crew that day. Work progressed normally until lunchtime. When Mr. Murray left the premises to buy cigarettes, he drove across a grassy area into the parking lot of an adjoining bank. Hoilman's superintendent, Scott,[2] yelled at him to not drive across the grass and through the bank's parking lot. Mr. Murray rolled down his window and apologized.

When Mr. Murray returned from buying cigarettes, Mr. Joe Ball was sitting in his truck near where Mr. Murray parked his car. Mr. Murray exited his car and confronted Scott, the superintendent. The confrontation escalated to the point that Mr. Murray threatened the superintendent. Mr. Ball observed the confrontation and exited his truck to intervene and terminate Mr. Murray's employment. Mr. Ball decided to terminate Mr. Murray because he worried he would lose business with Hoilman Construction.

The parties disagree regarding the events following the confrontation.

*Mr. Murray's version of events*

Mr. Murray testified Mr. Joe Ball intervened in the confrontation and told him to be quiet or leave. Then Hoilman's superintendent told Mr. Ball that Mr. Murray had to leave or he would call the police. Mr. Murray left without any discussion regarding his future employment. Mr. Murray later returned to the jobsite, and Mr. Ball stated to him that he was at fault for the events leading to his being required to leave.

Mr. Murray and his witnesses[3] testified he met with Mr. John Ball[4] on two separate occasions at Mr. Ball's house regarding a loan for $100.00 and a Christmas bonus of $200.00. Mr. John Ball told him Straightline employees would work Friday, December 26.

Mr. Murray received a telephone call the morning of December 26, 2014, from Mr. Joe Ball. He told Mr. Murray to clean brick at the Bailey Ranch site. Mr. Murray advised he had no money to drive there. Mr. Murray later received a text from Mr. Joe Ball to come to Food City to get his check. He met Mr. Joe Ball and Mr. John Ball, Sr. at Food City to obtain his paycheck. He testified he arrived with his girlfriend who stayed in

---

[2] The parties did not provide Scott's last name.
[3] Robin Milhorn, Mr. Murray's girlfriend, and Rena Ratliff, their friend.
[4] Mr. John Ball is Joe Ball's brother. He is not to be confused with Mr. John Ball, Sr., Joe and John's father. For ease of understanding, the Court will refer to the father as John Ball, Sr. All three are owners of Straightline.

2

the car. He took issue with Straightline deducting the $100.00 from his check to repay the loan he received from John Ball, as John Ball had promised not to request repayment until the new year. He received wages for seven and a half hours of work when he should have received wages for twenty hours of work. He became angry and complained to Joe Ball. John Ball, Sr. asked him whether he would clean brick at Bailey Ranch or not. He then left to clean brick at Bailey Ranch.

He testified he went to Bailey Ranch to clean mortar joints and that task involved the use of tools. However, he fell from a scaffold when he started to work and an ambulance took him to the hospital.

*Straightline's version of events*

Mr. Joe Ball testified as he approached Mr. Murray following the confrontation, Mr. Murray told him that there was no need to terminate him because he quit. Mr. Murray then gathered his tools and left the premises. Mr. Murray returned later to retrieve his jacket. Mr. Murray and Mr. Ball spoke again. Mr. Murray accused Mr. Ball of not having "his back" during the confrontation with Hoilman's superintendent. Mr. Ball told Mr. Murray that he felt Mr. Murray should not have cursed at the superintendent.

Mr. Murray called Mr. Joe Ball around 8:00a.m. on December 26, 2014, concerning his final paycheck. Mr. Ball initially told Mr. Murray he would get it at the end of the day. He later changed his mind, and to avoid conflict with Mr. Murray, arranged to meet him at Food City. Mr. Murray met Mr. Joe Ball and Mr. John Ball, Sr. at Food City during lunch. Mr. Joe Ball observed that Mr. Murray arrived alone. After he received his check, Mr. Murray became irate cursed and threatened him and his father. He left Food City around noon. John Ball, Sr. did not ask Mr. Murray to work at Bailey Ranch that day. Straightline's employees were only working at the CenturyLink building.

The Ball family and Mr. Kassem, the general contractor at the Bailey Ranch site, testified the mortar joints were dry and could not easily have been fixed with a simple tool. Mr. Kassem did not observe any tools at the jobsite after Mr. Murray fell. Mr. Kassem hired another subcontractor to clean the brick.

*Mr. Murray's assertions at the Expedited Hearing*

Based upon this proof, Mr. Murray was Straightline's employee at the time of the accident on December 26, 2014. Straightline had not terminated him and he had not quit on December 23, 2014. He received a loan and a bonus after the confrontation with Hoilman's superintendent. On December 26, 2014,both Mr. Joe Ball and John Ball, Sr. told him to clean brick at Bailey Ranch. Because he was an employee performing work for Straightline at the time of his accident, he is entitled to medical and temporary disability benefits.

Mr. Murray was not Straightline's employee at the time of the accident of December 26, 2014. He quit his job after lunch on December 23, 2014. He threatened Hoilman's superintendent, and then threatened two of Straightline's owners after he received his last paycheck. No one asked Mr. Murray to work at Bailey Ranch on December 26, 2014, because he no longer worked for Straightline. Because Mr. Murray was not an employee when he was injured, Straightline has no liability for workers' compensation in this matter.

## Findings of Facts and Conclusions of Law

In this workers' compensation case, Mr. Murray has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, Mr. Murray need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.*

The legislature has expressly defined the phrase "arises primarily out of and in the course and scope of employment" to mean that an injury is compensable "*only* if it has been shown by a preponderance of the *evidence* that the *employment* contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2015) (emphasis added). The legislature has defined an "employee" to mean "every person . . . in the service of an employer . . . *under any contract of hire or apprenticeship, written or implied.*" Tenn. Code Ann. § 50-6-102(12)(A) (2015) (emphasis added.) The Workers' Compensation Appeals Board recently held, "If only 'employees' as defined in the workers' compensation law are eligible for workers' compensation benefits, then the critical issue . . . is whether the claimant was an 'employee' at the time of the injury." *Duck v. Cox Oil Co.,* No. 2015-07-0089, 2015 TN Wrk. Comp. App. Bd. LEXIS 2, at *14 (Tenn. Workers' Comp. App. Bd. Jan. 21, 2016). In this case, the parties confined the evidence to the issue of Mr. Murray's employment status at the time of the injury.

This Court observed Mr. Murray and his witnesses and finds they were not credible. Mr. Murray asserted he confronted and threatened a client's superintendent and two of Straightline's owners without any effect upon his employment status. Whereas, Mr. Joe Ball testified that Mr. Murray quit after the confrontation on December 23, 2014, and did not work for Straightline on December 26, 2014. Straightline's employees

worked that day on the CenturyLink project. Mr. Joe Ball's testimony was more credible in the context of the entire proof.

Further, Mr. Murray's testimony that his check was short due to the loan he received from Mr. John Ball is not credible. He testified his check contained wages for seven and a half hours of work instead of twenty hours of work. Considering Mr. Murray earned $18.25 an hour, a deduction of twelve and half hours would have been over $228.00, not $100.00. Rather, the evidence established, as Mr. Joe Ball testified, that Straightline provided Mr. Murray a final paycheck for the hours he worked the week before he quit.

Neither was Mr. Murray's testimony credible about his work at Bailey Ranch on December 26, 2014. Not only the Ball family but also Mr. Kassem testified Mr. Murray could not have fixed the joints as he explained because the mortar "set" prior to December 26, 2014. Further, Mr. Kassem had not contracted Straightline to the clean brick at Bailey Ranch. In addition, Mr. Kassem found no work tools at the Bailey Ranch site after Mr. Murray's incident. Mr. Murray has not come forward with any credible reason for his presence at Bailey Ranch on December 26, 2014, when the evidence establishes Straightline's employees were working at the CenturyLink project that day.

The Court finds the evidence preponderates in favor of the conclusion that Mr. Murray was not Straightline's employee on December 26, 2014, because he quit his job on December 23, 2014. Accordingly, Mr. Murray has not come forward with sufficient evidence for the Court to determine he would succeed at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Murray's claim against Straightline for temporary disability and medical benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on April 18, 2016, at 10:00 a.m. Eastern.

**ENTERED this the 24th day of March, 2016.**

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

5

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call 855-543-5044 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>
1. Affidavit of Charles Murray; and,
2. Cell phone texts.

Technical record:[5]
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing; and,
4. Agreed Order.

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on March 24, 2016.

| Name | Certified Mail | First Class Mail | Via Email | Service Sent To: |
|---|---|---|---|---|
| W. Culbertson, Esq. | | | X | rwc@wayneculbertsonlaw.com |
| R. Pigue, Esq. | | | X | rpigue@tpmblaw.com |

Penny Shrum, Clerk of the Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov